## SHELDON, KAMM & CO. *v.* BREMER.

1. MECHANICS' LIENS—HUSBAND AND WIFE—HOMESTEAD—NECESSITY OF WIFE'S SIGNATURE TO CONTRACT.

 A subcontractor cannot enforce a lien against property which was held, at the time he began furnishing materials, in the name of husband and wife by the entireties and intended to be occupied as a homestead, notwithstanding that, at the date of executing the contract for constructing the house, title stood in the name of the wife only. HOOKER, BIRD, and MOORE, JJ., dissenting.

2. SAME.

 It is only when land is owned by husband and wife by the entireties, or when the land is held and occupied as a homestead, that a contract for a building on it is required to be in writing, signed by both, in order that a mechanics' lien may attach; in every other case the contract may be written or unwritten, express or implied. 3 Comp. Laws, §§ 10710–10712.

3. SAME—TITLE.

 If the person contracting for the erection of the building has no title to the land, a lien attaches to the building alone.

4. SAME.

 And in case the land was held by the entireties at the date the original contractor began furnishing materials or labor, the subcontractor could not have a lien without the signature of the wife to the contract.

5. SAME.

 Mechanics' liens rest in strict right, not upon mere equities.

Error to Bay; Collins, J. Submitted January 3, 1911. (Docket No. 6.) Decided July 5, 1911.

Bill by Sheldon, Kamm & Company against Frederick J. Bremer and others to enforce a mechanic's lien. From a decree dismissing the bill as to all defendants except said Bremer, the complainant appeals. Affirmed.

*Stoddard & McMillan*, for appellant.

*Gillett & Clark*, for appellees.

OSTRANDER, C. J.  It is only when land is owned by husband and wife, by entireties, or when the land is held and occupied as a homestead, that a contract for a building thereon is required to be in writing, and signed by both the husband and wife, in order that a lien may attach to either land or building.  In every other case the contract for the improvement may be written or unwritten, express or implied.  If made with the owner, part owner, or lessee, of the land, a lien is created upon the improvement and also upon the entire interest of such owner, part owner, or lessee in and to the land, "at the time work was commenced or materials were begun to be furnished by the contractor under the original contract, or by the subcontractor who furnishes or is furnished with any labor or material in the performance or execution of such subcontract and also to the extent of any subsequent acquired interest of any such owner, part owner or lessee." 3 Comp. Laws, §§ 10710, 10711.  If the person contracting for the erection of a building has no legal title to the land, a lien attaches to the building or structure erected. 3 Comp. Laws, § 10712.  So that a person furnishing materials or labor for any structure erected upon land may have his lien against either the structure alone, or against both the structure and an interest in the land, in all cases, without regard to the original contract, except in cases where the land is owned by entireties, or is held and occupied as a homestead.

If it is so owned, or so held and occupied, he may have a lien against neither land nor building, unless the contract is signed by the husband and the wife.  These provisions of the law seem to be plain.  Applied in this case, they deny complainant any relief.  Complainant is a subcontractor.  When it began to furnish material, the title to the land was held by Galbraith and his wife, by entireties.  The original contract was made by Galbraith, who at the time had no title to the land.  Assuming, which I am not willing to do, that the subcontractor may rely upon the state of the title at the time the original contrac-

tor began to furnish material or labor, complainant is not aided, because at that time the land was owned by entireties, and the improvement was begun upon land thus owned. If the court is to continue to hold, as it has heretofore held, that a mechanic's lien must rest in strict right, and not upon mere equities, complainant is entitled to no relief.

The decree dismissing the bill of complaint must be affirmed, with costs.

McALVAY, BROOKE, BLAIR, and STONE, JJ., concurred with OSTRANDER, C. J.

HOOKER, J. (*dissenting*). Mrs. Galbraith became the legal owner of a city lot by virtue of a deed, dated May 20, 1907. Her husband paid no part of the consideration; the lot being presented to her from her mother. On July 22, 1908, Mr. Galbraith made a written contract with Bremer for the building of a dwelling upon this lot. Mrs. Galbraith did not sign this contract. On July 27, 1908, Bremer ordered and complainant delivered some rough lumber at the premises. Bremer paid for it, and it was used in the building of a toolhouse upon the curb line, preliminary to the erection of the building contracted for. We understand that none of it was used in or upon the dwelling. It was not included in the claim of lien filed by the complainant, which states that "the furnishing of said materials was begun upon the 24th day of August, A. D. 1908." It appears in the record that on August 4, 1908, Bremer submitted the specifications to complainant for a bid on the material requisite for the construction of the house, and the bid was delivered on August 11th. We do not find testimony of the exact date of acceptance of the bid, but it was evidently before the first delivery of such material under the contract, which occurred on August 24th.

It seems to have been the intention of the Galbraiths to hold title to the property by the entireties, and on the 25th day of July Mrs. Galbraith deeded the lot to their coun-

sel, Mr. Beckwith, and he immediately deeded the premises to the Galbraiths, husband and wife, by entireties, and they have so held them since. There is testimony from them that it had been their expectation that the title would be so conveyed to them in the first instance, and, upon discovery that the deed ran to Mrs. Galbraith only, they employed Mr. Beckwith to make the necessary papers to correct the mistake some months before the contract with Bremer was made, but the papers were actually signed later. They expected to use the lot for a home, and Mrs. Galbraith knew and approved of the letting of the contract to Bremer by Mr. Galbraith.

The deeds of July 25th were recorded on July 31st, which, as already indicated, was some 11 or more days before the complainant's bid was accepted by Bremer. The record shows, also, that the Galbraiths placed two mortgages upon the property; the first, dated August 8, 1908, for $2,000, to the Savings & Loan Association, and the second, dated January 5, 1909, for $3,000. Both mortgagees are parties defendant. The time when work upon the excavation for the dwelling began is perhaps uncertain, but it is evident that it was not before August, if it was earlier than September 1st.

The contract was abandoned by Mr. Bremer before the building was completed, for the alleged reason that he was unable to obtain payments for his work as fast as he desired, and Galbraith was obliged to finish the building, and, aside from complainant's alleged lien, Galbraith has paid out more than the contract price for the construction and completion of the house. It is true, however, that Bremer was in arrears to the complainant some $1,300, for which it would doubtless have a lien, did Galbraith alone have title to the premises. It should be said that nothing indicates any intentional fraud on the part of Galbraith or his wife in making or taking the Beckwith deeds, or in making the contract. Apparently Galbraith is solvent and able to pay his obligations, and there is

nothing to this case but the question of complainant's legal right to enforce a lien against this dwelling.

The learned circuit judge was of the opinion that no lien attached, and dismissed the bill as to all defendants, except Bremer, against whom he granted a decree for $1,402.35 and costs. The complainant appealed. No brief is filed on behalf of defendants other than the Galbraiths.

Bremer had a contract with Galbraith to construct a building on land to which he had no title, legal or equitable, unless we can say that he had contract rights to an interest by entireties, and we cannot say that there was any evidence justifying such an inference. The land belonged to the wife, and she did not sign the contract. A lien may have been acquired upon the new building while the land was so held; the case having been one where a contract was made by a person who had no title whatever to the premises. Apparently 3 Comp. Laws, § 10712, would be applicable:

"Any person furnishing services or materials for the erection of a new building or structure upon land to which the person contracting for such erection has no legal title, shall have a lien therefor upon such [building] buildings or structure; and the forfeiture or surrender of any title or claim of title held by such contracting person to such land shall not defeat the lien upon such building or structure of such person furnishing services or materials as aforesaid. In case the property covered by the lien is held by the vendee in a land contract, and he surrenders or forfeits his rights thereunder, the person or persons holding such liens may be subrogated to the rights of such vendee as his rights existed immediately before such surrender or forfeiture, by performing the covenants contained in such contract within thirty days after such forfeiture or surrender is made."

The case of *Holliday* v. *Mathewson*, 146 Mich. 336 (109 N. W. 669), was such a case, and it is claimed that the rule should be the same in this case, even had the land been owned by entireties when Bremer's contract was made. It may be true that such a construction of

the statute would have been a not unreasonable one, but it has not been so construed. On the contrary, such cases have been made to turn upon a strict construction of section 10711. The case of *McMillan* v. *Schneider*, 147 Mich. 261 (110 N. W. 961), is not conclusive of the question, because the exact question appears not to have been in the case, and this opinion indicates that fact. In *Bauer* v. *Long*, 147 Mich. 351 (110 N. W. 1059, 118 Am. St. Rep. 552), the point was expressly decided, and the *Holliday Case* distinguished. *Frolich* v. *Blackstock*, 155 Mich. 604 (119 N. W. 906), is a similar case to *Bauer* v. *Long*, and it has been followed by the recent case of *Restrick Lumber Co.* v. *Wyrembolski*, 164 Mich. 71 (128 N. W. 1083), and it must be said that these cases settle the rule that a wife, where land is held by entireties, cannot be bound by a husband's contract for the erection of a house thereon, and that a lien will not attach, either to the land or new building, in such a case.

Counsel, however, ask us to distinguish the present case from those last cited, upon the ground that at the time the contract was made with Bremer the land was not held by the entireties, but by the wife alone, and Galbraith had no legal title to it whatever; and they urge that therefore the lien should be enforced against the building under the rule of the *Holliday Case*. It is doubtless true that, if a valid lien attached to the house prior to the deed to Beckwith, it was not cut off by the change in title, especially as there is no question of a bona fide purchaser involved.

The difficulty arises over the question, Had such lien accrued? We think it probable that neither Bremer nor the complainant took the trouble before contracting to make an investigation of the title. That is unimportant, however. It is not difficult to see that, if the former had done so, and found title in Mrs. Galbraith, he would be unlikely to think it necessary to examine it again before delivering material under his contract, and we see a hardship in denying relief to him, after he should have gone

on in ignorance of the contract and constructed the building, upon the ground that there was a transfer before any delivery was made, and that therefore the lien could not attach. This is a peculiar case. The right to a lien accrued, if ever, upon the delivery upon the premises, under the contract, according to the general rule, or at any rate at the time work was commenced upon the building. See 27 Cyc. pp. 215, 218, and note.

The contract with Bremer was made by Galbraith when he had no title whatever. Had no change been made in the title until the material was furnished under the contract, it is obvious that no lien could have been enforced against the land. It is as clear that it could have been enforced against the building under the rule followed in the case of *Holliday* v. *Mathewson, supra.* The only change that has been made in the title has been a transfer of an interest from the wife to the husband; the result being that they have a joint interest, with mutual right of survivorship, making them owners by entireties. There is no question of *bona fides* in the case. Not only was no consideration paid by the husband, but both husband and wife were fully advised of the contract; neither informed Bremer of the change in title; both knew and approved of the furnishing of the material and its use in the house, which they permitted to be erected. On the other hand, it is clear that complainant had no knowledge of the change in title. When we consider that the lien would attach to the house, if the wife had not made the deed to Beckwith, and that it would have attached to both land and house, had the husband either owned the full title when the contract was made, or acquired it afterwards by deed from the wife, or any one else, it would seem to be a great injustice to say that an arrangement between the husband and wife, by which she changes the title to one by the entireties, can be permitted to defeat a lien on behalf of an unsuspecting contractor, who furnishes material in ignorance of such change. By this change the house which when completed would be subject to the

lien, although the wife should hold the entire title, would be released altogether, although the wife should continue to own an interest, and notwithstanding the fact that the husband should own the remaining interest.

The situation may be succinctly stated thus: The wife owned this land. Had she retained her title, a valid lien would have existed upon the house. Had she conveyed the title to the husband, the lien would have been good as to both land and house. Can she by conveying to him, creating and reserving an estate by entireties (which is practically what she did), exempt both house and land as to both of them? Had this been done with the intent to overreach the contractor, would it not be a fraud that would fail of its purpose, and, although lacking in moral turpitude, can it be permitted to accomplish such a wrong?

The transfer of the title to a bona fide purchaser before performance of a contract will probably preclude a lien, which has not already attached, by reason of the furnishing of some of the labor or material under the contract, and to the extent that it shall be so furnished after the transfer, if done in ignorance of such transfer, but this is not such a case. The transfer is not only not based on a consideration, proceeding from one buying in ignorance of the contract, but it is a conveyance of an interest to the maker of the contract, whose duty it was to protect the materialmen. Had complainant's contract been made before the record of the Beckwith deeds, we should have no hesitancy in saying that these deeds would not, under the proofs in this case, deprive complainant of its right of lien.

Counsel truly say that the complainant might have ascertained from the record at the time he made his bid and contract that the land was held by entireties, and was not subject to a lien for work or materials to be furnished, and therefore no lien could attach to the building. We do not like to apply so strict a rule in a case like this, where the contractor himself might have had a lien for these identical

materials, had he furnished them in ignorance of the change, inasmuch as his contract antedated the change in title. To do so would make it necessary for every laborer who should be employed to work on the building to investigate the records before going to work. Whatever we might have to hold, were this title held by a bona fide purchaser for value, we think that in this case it should be held that the erection of the building, with the approval of both husband and wife, under a contract made prior to the transfer, under the circumstances of this case, entitles those who in good faith furnished materials for it, to protection under such contract. In short, this deed has worked a hardship upon the complainant, if its lien is to be denied, which, under the peculiar circumstances of the case, justifies us in saying that the transfer of an interest to the husband relieves neither of them from complainant's right of lien upon the building.

The decree should be reversed, and a decree in favor of the complainant, as against the building, should be entered for the sum of $874.84, with interest at 5 per cent. from May 5, 1909, and costs of both courts, subject to modification as to amount on the settlement of the decree, or by remanding the record, if found necessary.

BIRD and MOORE, JJ., concurred with HOOKER, J.